# JOINT APPENDIX
# EXHIBIT 30

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| STRYKER SALES CORPORATION, ) | Case No.: 1:15-cv-01161 ECF |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| STEPHEN SIROONIAN and CORE ) | |
| SURGICAL, INC., ) | |
| ) | |
| Defendants. ) | |

Expert Report of Jon W. Tepp


_____
Jon W. Tepp
September 19, 2016

I understand that this report may contain information subject to a protective order and may be CONFIDENTIAL or CONFIDENTIAL—ATTORNEYS' EYES ONLY

lost sales at four Fresno hospitals—Children's, Clovis, Kaweah Delta, and Eye Q—where Biomet had not made any sales. Stryker also claims lost sales at Kaiser Permanente Medical center, where, as described above, pre-existing contractual agreements were in place preventing Stryker from losing sales to Biomet.[48] Therefore, at least $660,867 of Stryker's non-annualized sales decline as calculated by the Wills Report is due to legitimate competition from vendors other than Biomet or other market factors—not the alleged actions in this case.[49]

20. It is my opinion that the only sales for which potential causality with Mr. Siroonian's alleged actions can be established to a reasonable degree of economic certainty are the surgeries Mr. Siroonian participated in during November 2015. As shown in Figure 2, Mr. Siroonian participated in seven CMF surgeries in November 2015 in which Biomet products were used.[50] The Biomet products used in these surgeries totaled revenues of $16,320; therefore, but for Mr. Siroonian's participation in these surgeries, I measure Stryker's damages assuming it would have made those sales. To date, I have not seen data from Stryker sufficient to allow me to specifically map revenue and profitability to the specific Stryker products that would have been used in these seven surgeries. Accordingly, I calculate the profit Stryker would have made on $16,320 in sales based on Stryker's overall Fresno profit and loss statements.[51]

---

[48] Figure 3 shows Biomet had $70 in sales at Kaiser in this period.
[49] This amount does not include losses Stryker incurred as a result of its failure to win the neuro RFP at CRMC, it's mishandling of the sales representative transition after the departure of Mr. Siroonian, or sales of Biomet products unrelated to the Mr. Siroonian's alleged actions.
[50] Mr. Siroonian participated in one other surgery during this period on November 13, 2015. This surgery was a pectus surgery, which I understand is a product that is unique to Biomet, and therefore could not have been a lost sale to Stryker.
[51] The Wills Report also relies on these financial data. I discuss my corrections of the Wills Report's methodology below.

I understand that this report may contain information subject to a protective order and may be CONFIDENTIAL or CONFIDENTIAL—ATTORNEYS' EYES ONLY

21. Stryker's profit and loss statements show three cost categories that Stryker would have had to incur to make its lost sales: cost of goods sold, royalties, and variable expenses.[52] I also understand that Stryker would have had to incur costs related to "fringe benefits," which are calculated as 15% of commission expense.[53] Figure 4 (Corrected Analysis of Avoided Costs) shows that the total of these costs is equal to 38.49% of net revenue for the period from November 2014 through October 2015. Stryker's avoided costs are therefore equal to $6,282 ($16,320 in lost sales multiplied by 38.49%). Figure 1 shows Stryker's calculated lost profits of $10,038 ($16,320 in lost sales minus $6,282 in avoided costs).

**The Wills Report**

22. The Wills Report opines to an alleged lost profits calculation for "Year One" and assumes this lost profits amount would remain constant for two additional years.[54] It is my opinion that the methodology used in the Wills Report fails to consider other factors impacting Stryker's sales in the Fresno territory, contains clear errors and unsubstantiated claims, speculatively assumes any alleged damage would extend beyond the time period where Mr. Siroonian would be allowed to participate in the Fresno market for a competitive company, and therefore fails to provide an economically reliable estimate of damages, if any, that Stryker incurred as a result of Mr. Siroonian's alleged actions.

*Wills Report's Failure to Consider Other Factors Impacting Stryker's Sales*

23. The Wills Report indicates that it uses a "before-and-after" methodology in its analysis of Stryker's alleged lost revenues.[55] However, a proper application of a "before and

---

[52] STRSIR00000896.
[53] Wills Report, p. 8.
[54] For example, see the Wills Report, p. 10.
[55] Wills Report, p. 6.

I understand that this report may contain information subject to a protective order and may be CONFIDENTIAL or CONFIDENTIAL—ATTORNEYS' EYES ONLY    16